MICHAEL T. SHAMOON, ESQ.
Nevada Bar. No. 15324
Attorney for Petitioner
**SHAMOON ELIADES LLP**
7995 W Sahara Ave, Suite 101
Las Vegas, Nevada 89117
Telephone: 702-996-7411
Email: mts@shamooneliades.com
*Counsel for Petitioner Eman Zaeri*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA (Las Vegas)

| | |
|---|---|
| **EMAN ZAERI** <br><br> *Petitioner*, <br><br> v. <br><br> **KRISTI NOEM**, <br> in her official capacity as Secretary, U.S. Department of Homeland Security; 245 Murray Lane SW, Washington, DC 20528; <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY** <br><br> **PAMELA J. BONDI**, <br> in her official capacity as Attorney General of the United States, 950 Pennsylvania Avenue, NW, Washington, DC, 20530; <br><br> **TODD LYONS,** <br> in his official capacity as Acting Director and Senior Official Performing the Duties of the Director for U.S. Immigration and Customs Enforcement, 500 12th Street, SW, Washington, DC 20536; <br><br> **JASON KNIGHT,** <br> in his official capacity as Acting Field Office Director, Salt Lake City Field Office Director, U.S. Immigration & | Case No.: <br><br> Agency No: A 079-946-318 <br><br><br> **VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

Customs Enforcement, 2975 Decker
Lake Drive Suite 100, West Valley
City, UT 84119-6096;

**MARCOS CHARLES,**
in his official capacity as Acting
Executive Associate Director,
Enforcement and Removal
Operations, U.S. Immigration &
Customs Enforcement, 500 12th
Street, SW, Washington, DC 20536;

**U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT**

**JOHN MATTOS,**
in his official capacity as Warden,
Nevada Southern Detention Facility,
2190 E. Mesquite Ave.
Pahrump, NV 89060;

*Respondents.*

## INTRODUCTION

1.      Eman Zaeri ("Petitioner" "Mr. Zaeri") is a 41-year old resident of the United States. He has lived in this country since 2003, when he was admitted as a refugee fleeing religious persecution from Iran. He is a former Lawful Permanent Resident who was ordered removed by an Immigration Judge on August 18, 2020 and granted deferral of removal under the Convention Against Torture (CAT). Mr. Zaeri was released under an Order of Supervision (OSUP) on August 19, 2020. Immigration and Customs Enforcement (ICE), without revoking his OSUP, arrested and detained Mr. Zaeri on June 25, 2025 even though he cannot be removed to his country of origin. Mr. Zaeri has complied with his order of release, and there has been no change in circumstances since he was granted CAT relief. In violation of Due Process and in a departure from longstanding agency policy and practice, ICE is refusing to release him despite his removal not being reasonably practicable or foreseeable.

2.      ICE served Mr. Zaeri with a Warning for Failure to Depart upon his arrest on June 25, 2025. Mr. Zaeri was ambushed and taken by officers from his home despite having complied with his order of release. ICE has made no effort to remove the Petitioner from the United States since re-detaining him, as they are well aware that he cannot be removed to Iran due to his CAT protection, nor have they proffered a third country of removal. In addition, Mr. Zaeri is unable to obtain travel documents due to the lack of diplomatic relations between Iran and the United States. Contrary to these facts, ICE issued Mr. Zaeri with a decision to continue his detention after the 90-day period on September 19, 2025, claiming that they expect to effectuate his removal in the foreseeable future without providing any evidence of progress in that regard.

3.      Mr. Zaeri files this Petition for a Writ of Habeas Corpus ("Petition") because the Respondents' actions violate the Due Process Clause of the Fifth Amendment to the U.S. Constitution, the Immigration and Nationality Act and implementing regulations, the Administrative Procedure Act, and the *Accardi* doctrine, which obligates administrative agencies to follow their own rules, procedures, and instructions.

4.      ICE previously found that Petitioner was neither a flight risk nor danger to the community when it released Petitioner from ICE detention on August 19, 2020 under an order of supervision. Since then, Petitioner has fully abided by the order's terms, including attending regularly scheduled check-ins with ICE.

5.      Without prior warning, and for no legitimate reason, ICE agents arrested Mr. Zaeri from his home in Las Vegas, Nevada on June 25, 2025, just days after the United States conducted missile strikes on Iran's nuclear facilities. The proximity in time of Petitioner's and scores of other Iranian nationals' arrests to these events is no coincidence. Mr. Zaeri and those

similarly situated to him are being detained not because their removal is likely or foreseeable, but because they are Iranians. The nature of such detention is punitive and does not serve a legitimate legal purpose.

6.    Mr. Zaeri brings this petition pursuant to 28 U.S.C. § 2241; the Immigration and Nationality Act, 8 U.S.C. §§ 1101-1538 and its implementing regulations; the Administrative Procedure Act, 5 U.S.C. §§ 500-596, 701-706; and the United States Constitution to allow for his immediate release from immigration detention.

## JURISDICTION AND VENUE

7.    Petitioner is in the custody of Respondents. He is in the physical custody of the Nevada Southern Detention Center, 2190 E Mesquite Ave, Pahrump, NV 89060 ("NSDC") in Pahrump, Nevada. NSDC is a private detention center operated by CoreCivic, Inc., under contract with ICE.

8.    This Court has subject matter jurisdiction under 28 U.S.C. § 2241 and the Suspension Clause of the Constitution because this action is a habeas corpus petition and under 28 U.S.C. § 1331 because this action arises under federal law, including the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.*, and Administrative Procedure Act, 5 U.S.C. § 551, *et seq*.

9.    This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

10.    Venue is proper in this District under 28 U.S.C. § 2241; 28 U.S.C. § 1391(b); and 28 U.S.C. § 1391(e)(1) because when this Petition was filed Petitioner was detained within the geographic jurisdiction of the District of Nevada (Las Vegas). Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and

agencies of the United States, and a substantial part of the events or omissions giving rise to the claim occurred in this district. *See* 28 U.S.C. § 1391(e).

## REQUIREMENTS OF 28 U.S.C. § 2243

11.    The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

12.    Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

13.    Mr. Zaeri is a citizen of Iran who has resided in the United States since 2003. He has been in immigration detention since June 25, 2025.

14.    Respondent Kristi Noem is the Secretary of the Department of Homeland Security. She is responsible for the implementation and enforcement of the Immigration and Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention. Ms. Noem has ultimate custodial authority over Petitioner and is sued in her official capacity.

15.    Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens. Respondent DHS is a legal custodian of Petitioner.

16.    Respondent Pamela Bondi is the Attorney General of the United States. She is responsible for the Department of Justice, of which the Executive Office for Immigration Review (EOIR) and the immigration court system it operates is a component agency. She is sued in her official capacity.

17.    Respondent Department of Justice (DOJ) is the federal agency responsible for adjudicating removal and related bond cases. EOIR, and its components the immigration courts and Board of Immigration Appeals (BIA) is a division of DOJ.

18.    Respondent Todd Lyons is the Acting Director and Senior Officer Performing the Duties of the Director of ICE. Respondent Lyons is responsible for ICE's policies, practices, and procedures, including those relating to the detention of immigrants during their removal procedures. Respondent Lyons is a legal custodian of Petitioner. Respondent Lyons is sued in his official capacity.

19.    Respondent ICE is the subagency of DHS that is responsible for carrying out removal orders and overseeing immigration detention. Respondent ICE is a legal custodian of Petitioner.

20.    Respondent Jason Knight is the Acting Director of the Salt Lake City Field Office of ICE Enforcement and Removal Operations, a federal law enforcement agency within the Department of Homeland Security ("DHS"). ERO is a directorate within ICE whose responsibilities include operating the immigration detention system. In his capacity as ICE ERO Salt Lake City, Acting Field Office Director, Respondent Knight exercises control over and is a custodian of immigration detainees held at NSDC. At all times relevant to this Complaint, Respondent Knight was acting within the scope and course of his employment with ICE.  He is sued in his official capacity.

*PETITION FOR WRIT OF HABEAS CORPUS*

21.     Respondent Marcos Charles is the Acting Executive Associate Director of ICE ERO Headquarters. He has jurisdiction of ICE detainees beyond the initial 90-day period of detention. At all times relevant to this Complaint, Respondent Charles was acting within the scope and course of his employment with ICE.  He is sued in his official capacity.

22.     Respondent John Mattos, the Warden of NSDC which detains individuals suspected of civil immigration violations pursuant to a contract with ICE. Respondent Mattos exercises physical control over immigration detainees held at NSDC. Respondent Mattos is sued in his official capacity.

23.     Respondents individually and collectively will be referred to as "Respondents."

## LEGAL FRAMEWORK

24.     "The Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citation modified). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690 (2001).

25.     Under substantive due process doctrine, a restraint on liberty like revocation of a non-citizen's order of supervision is only permissible if it serves a "legitimate nonpunitive objective." *Kansas v. Hendricks*, 521 U.S. 346, 363 (1997). The Supreme Court has only recognized two legitimate objectives of immigration detention: preventing danger to the community or preventing flight prior to removal. *See Zadvydas v. Davis*, 533 U.S. 678, 690-92 (discussing constitutional limitations on civil detention).

26.     "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty," like the decision to revoke a non-citizen's order of supervision.

*Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (citation modified). "The fundamental requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (citation modified).

27.    A non-citizen with a final order of removal "who is not removed within the [90-day] removal period . . . shall be subject to [an order of] supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3) (titled "Supervision after 90-day period").

28.    A non-citizen may only be detained past the 90-day removal period following a removal order if found to be "a risk to the community or unlikely to comply with the order of removal" or if the order of removal was on specified grounds. *Id.* § 1231(a)(6).

29.    But even where initial detention past the 90-day removal period is authorized, if "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by [§ 1231(a)(6)]. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances . . . ." *Zadvydas v. Davis*, 533 U.S. 678, 699-700.

30.    Regulations purport to give additional reasons, beyond those listed at § 1231(a)(6), that an order of supervision may be revoked and a non-citizen may be re-detained past the removal period: "(1) the purposes of release have been served; (2) the alien violates any condition of release; (3) it is appropriate to enforce a removal order . . . ; or (4) the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2); *see also id.* § 241.13(i) (permitting revocation of an order of supervision only if a non-citizen "violates any of the conditions of release"). Because "[r]egulations cannot circumvent the plain text of the statute[,]" courts question whether these regulations are ultra

vires of statutory authority. *See, e.g.*, *You v. Nielsen*, 321 F. Supp. 3d. 451, 463 (S.D.N.Y. 2018) (comparing regulations to 8 U.S.C. § 1231(a)(6), which authorizes detention past the removal period only if person is a risk to the community, unlikely to comply with the order of removal, or was ordered removed on specified grounds).

31.    It is clear, however, that regulations permit only certain officials to revoke an order of supervision: the ICE Executive Associate Director, a field office director, or an official "delegated the function or authority . . . for a particular geographic district, region, or area." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 161 (W.D.N.Y. 2025) (citing 8 C.F.R. §§ 1.2, 241.4(l)(2) and explaining that the Homeland Security Act of 2002 renamed the position titles listed in § 241.4). If the field office director or a delegated official intend to revoke an order of supervision, they must first make findings that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate [Director]." 8 C.F.R. § 241.4(l)(2). And for a delegated official to have authority to revoke an order of supervision, the delegation order must explicitly say so. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 161 (finding a delegation order that "refers only to a limited set of powers under part 241 that do not include the power to revoke release" insufficient to grant authority to revoke an order of supervision).

32.    Upon revocation of an order of supervision, ICE must give a non-citizen notice of the reasons for revocation and a prompt interview to respond. 8 C.F.R. § 241.4(l)(1).

33.    The Administrative Procedure Act authorizes judicial review of final agency action. 5 U.S.C. § 704.

34.    Final agency actions are those (1) that "mark the consummation of the agency's decisionmaking process" and (2) "by which rights or obligations have been determined, or from

*PETITION FOR WRIT OF HABEAS CORPUS*

which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citation modified).

35.    ICE's revocation of an order of supervision is a final agency action subject to this Court's review.

36.    The re-detention of Petitioner here is an effective revocation which marked the consummation of ICE's decisionmaking process regarding Petitioner's custody.

37.    The revocation was also an action by which rights or obligations have been determined or from which legal consequences flowed because it led ICE to detain Petitioner in violation of his rights under the Constitution, statute, and regulation.

38.    Under the *Accardi* doctrine, a foundational principle of administrative law, agencies must follow their own procedures, rules, and instructions. See *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (setting aside an order of deportation where the Board of Immigration Appeals failed to follow procedures governing deportation proceedings); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures . . . even where the internal procedures are possibly more rigorous than otherwise would be required.").

39.    *Accardi* is not "limited to rules attaining the status of formal regulations." *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991). Courts must also reverse agency action for violation of unpublished rules and instructions to agency officials. See *Morton v. Ruiz*, 415 U.S. 235 (affirming reversal of agency denial of public assistance made in violation of internal agency manual); *U.S. v. Heffner*, 420 F.2d 809, 812 (4th Cir. 1969) (under *Accardi*, reversing decision to admit evidence obtained by IRS agents for violating instructions on investigating tax fraud).

40. Where a release notification issued alongside an order of supervision instructs that a non-citizen with a final order of removal will be given an opportunity to prepare for an "orderly departure," ICE's failure to follow that instruction is an *Accardi* violation. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 169; *Ragbir v. Sessions*, 2018 WL 623557 (S.D.N.Y. Jan. 29, 2018), *vacated and remanded on other grounds sub nom. Ragbir v. Barr*, 2019 WL 6826008 (2d Cir. July 30, 2019); *Rombot v. Souza*, 296 F. Supp. 3d 383 (D. Mass. 2017) (ordering release of petitioners to give an opportunity to prepare for orderly departure).

41. The Fifth Amendment's Due Process Clause incorporates an equal protection component that binds the federal government to the same constitutional standards that the Fourteenth Amendment imposes on the states. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). Under this principle, federal officers and agencies may not engage in unjustified discrimination among persons subject to their authority. Distinctions based on race, ethnicity, or national origin are inherently suspect and subject to strict judicial scrutiny, requiring that the classification be narrowly tailored to serve a compelling governmental interest. *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995); *Hernandez v. Texas*, 347 U.S. 475, 478–79 (1954). At a minimum, where no suspect classification or fundamental right is involved, governmental distinctions must bear a rational relationship to a legitimate governmental purpose. *Romer v. Evans*, 517 U.S. 620, 631 (1996). Courts evaluating an equal protection claim against federal immigration authorities consider whether the challenged action was motivated by an impermissible classification and whether it lacks a constitutionally adequate justification. *Washington v. Davis*, 426 U.S. 229, 239–42 (1976).

/ /

/ /

**FACTS**

42.    Petitioner has resided in the United States since 2003, and until his recent detention, lived in Las Vegas, Nevada. He was first admitted to the United States as a refugee on August 4, 2003. He subsequently adjusted his status to that of lawful permanent resident on July 7, 2005. His two brothers and parents are all U.S. citizens.

43.    On August 3, 2006, Petitioner was convicted of a felony under NRS 202.448 and subsequently placed in removal proceedings. He was sentenced to two years of probation and successfully complied with the requirements thereof. On August 18, 2020, he was ordered removed by an Immigration Judge and granted deferral of removal under CAT, preventing his deportation to Iran.

44.    On August 19, 2020, ICE released Mr. Zaeri from detention on an order of supervision, finding that he is neither a flight risk nor a danger to the community. Petitioner fully complied with the terms of his release and has not had any arrests or convictions since his felony in 2006.

45.    Despite there not being any change in circumstances or new facts suggesting that Mr. Zaeri now poses a risk, ICE arrested him on June 25, 2025. Though he was not served with a formal revocation of his order of supervision, Petitioner's re-detention without prior notice effectively constituted a revocation of his release.

46.    Petitioner was arrested just days after the United States conducted military strikes against his native Iran. In the week following Operation Midnight Hammer, ICE arrested more than twice as many Iranian nationals as it had during the entire preceding six-month period. Between January and June 2025, ICE arrested 86 Iranians, but during the week of June 22, 2025, that number surged to 183. Among these individuals were Mr. Zaeri and the other

Iranian nationals currently detained at Nevada Southern Detention Center. Petitioner was told by an ICE officer that he was unsure why he was being detained and that the field office had simply received instructions to "round up all Iranians".

47.    Following Petitioner's arrest and transfer to NSDC, ICE issued a custody determination to continue Petitioner's detention past the initial 90-day period without providing any details regarding the foreseeability of his removal.

48.    Petitioner has no travel documents and no way of obtaining them. Iran does not have any embassies or consulates in the United States, and there is no third country of which Mr. Zaeri is aware that would issue him a travel document.

49.    As a result, Petitioner remains in detention. Without relief from this Court, he will face the prospect of months, or even years, in immigration custody, separated from his family and community.

## CLAIMS FOR RELIEF

## COUNT I

### Violation of the Fifth Amendment of the U.S. Constitution
### Substantive Due Process

50.    Petitioner realleges all paragraphs above as if fully set forth here.

51.    When ICE issued Petitioner an order of supervision, it found that he is neither a danger to the community nor a flight risk.

52.    When Respondents revoked the order of supervision, Petitioner had complied with every condition of the order, and ICE had not secured necessary travel documents for removal. No change in circumstances warranted the order's revocation.

53.     Petitioner's detention therefore does not bear a reasonable relationship to the two regulatory purposes of immigration detention: preventing danger to the community or flight prior to removal.

54.     Because Respondents had no legitimate, non-punitive objective in revoking Petitioner's order of supervision, Petitioner's detention violates substantive due process under the Fifth Amendment to the U.S. Constitution.

## COUNT II

### Violation of the Fifth Amendment of the U.S. Constitution
### Procedural Due Process

55.     Petitioner realleges all paragraphs above as if fully set forth here.

56.     *Mathews v. Eldridge*, 424 U.S. 319, 333, instructs courts to balance three factors to determine whether procedural due process is satisfied: (1) the private interest at issue; (2) the risk of erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional procedural safeguards; and, (3) the government's interest, including fiscal and administrative burdens that additional or substitute procedural requirements entail.

57.     The first factor, the private interest at issue, favors Petitioner. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause [of the Fifth Amendment] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690.

58.     The second factor, the risk of erroneous deprivation of liberty and the probable value of procedural safeguards, favors Petitioner. To safeguard against erroneous deprivations of liberty, statute specifies the limited number of reasons that an order of supervision can be revoked. Regulations specify who may lawfully revoke the order and the procedures that must be followed when doing so, including giving notice and an opportunity to be heard.

*PETITION FOR WRIT OF HABEAS CORPUS*

Respondents violated those laws here, leaving the risk of erroneous deprivation of liberty not just high, but certain. Requiring Respondents to give notice and an opportunity to respond prior to revoking an order of supervision is of great value because it reduces the probability of needless detention of a person, like Petitioner, who is neither dangerous nor a flight risk.

59.    The third factor, the government's interest, also favors Petitioner. When the government ignores law that ensures notice and an opportunity to respond to a person at risk of revocation of an order of supervision, it is more likely to waste limited financial and administrative resources on unnecessary detention of people who are neither flight risks nor dangerous. This waste drags down the efficiency of the entire immigration system. And because the government must also spend resources defending against a habeas corpus petition in federal court to compel Respondents to comply with law, requiring Respondents to instead provide notice and a meaningful opportunity to respond prior to revoking an order of supervision reduces fiscal and administrative burdens on the government.

60.    For these reasons, revoking Petitioner's order of supervision without providing notice and a meaningful opportunity to respond violated procedural due process under the Fifth Amendment to the U.S. Constitution.

**COUNT III**

**Violation of the Fifth Amendment of the U.S. Constitution
Equal Protection**

61.    Petitioner realleges all paragraphs above as if fully set forth here.

62.    The Fifth Amendment's Due Process Clause embodies an equal protection guarantee that prohibits the federal government from subjecting individuals to differential treatment based on race, ethnicity, or national origin absent a constitutionally sufficient

*PETITION FOR WRIT OF HABEAS CORPUS*

justification. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995).

63.     Respondents' decision to arrest and detain Petitioner was motivated, at least in part, by his Iranian nationality, as evidenced by the timing of his arrest in the week following Operation Midnight Hammer and the contemporaneous statement by an ICE agent that officers had been instructed to "round up all Iranians."

64.     During that same week, ICE arrested more than twice as many Iranian nationals as it had in the entire preceding six-month period. Similarly situated individuals of other nationalities who had been released on orders of supervision were not subject to comparable mass revocations or re-detention.

65.     Because Respondents' enforcement actions were explicitly based on national origin, they are subject to strict scrutiny, which requires the government to show that the classification is narrowly tailored to serve a compelling governmental interest. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007); *Adarand Constructors, Inc. v. Peña*, 515 U.S. at 227.

66.     Respondents cannot satisfy this standard, as no compelling or narrowly tailored justification exists for targeting individuals for re-detention based solely on nationality. The conduct therefore violates the equal protection component of the Fifth Amendment's Due Process Clause.

## COUNT IV

### Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (B) Contrary to Law and Constitutional Right

67.     Petitioner realleges all paragraphs above as if fully set forth here.

*PETITION FOR WRIT OF HABEAS CORPUS*

68.    Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be . . . not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A), (B).

69.    The APA's reference to "law" in the phrase "not in accordance with law," "means, of course, *any* law, and not merely those laws that the agency itself is charged with administering." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003) (emphasis in original).

70.    Respondents' revocation of Petitioner's order of supervision was contrary to the agency's constitutional power under the Fifth Amendment's Due Process Clause, as explained above.

71.    The revocation was also not in accordance with the INA and implementing regulations governing who may lawfully revoke an order of supervision and under what circumstances, as cited and discussed in the Statutory Framework section above.

72.    Petitioner's order of supervision was not revoked by the ICE Executive Associate Director. The officer who revoked the order did not first make findings that revocation was in the public interest and that circumstances did not reasonably permit referral to the Executive Associate Director. Nor had the officer been delegated authority to revoke an order of supervision.

73.    Before revoking the order, Respondents did not make findings that Petitioner is dangerous or unlikely to comply with a removal order, as required by statute.

74.    Even assuming that regulations purporting to offer additional justifications for revocation of an order of supervision are not ultra vires, respondents did not comply with them. Respondents could not make findings that Petitioner's conduct indicated release would no

longer be appropriate or that Petitioner violated any condition of release, because he had not. Nor could Respondents make findings that the purposes of release had been served or that it was appropriate to enforce a removal order, because it had yet to make final arrangements for Petitioner's removal.

75.    Nor did the Respondents give Petitioner notice of the reasons for revocation and opportunity to be heard.

76.    The revocation should be held unlawful and set aside because it was contrary to the agency's constitutional power and not in accordance with the INA and implementing regulations.

## COUNT V

### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)
### Arbitrary and Capricious

77.    Petitioner realleges all paragraphs above as if fully set forth here.

78.    Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

79.    Respondents' revocation of Petitioner's order of supervision was arbitrary and capricious because it violated statute, regulation, and the Constitution, as described above.

80.    An agency decision that "runs counter to the evidence before the agency" is also arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).

81.    Respondents' decision to revoke Petitioner's order of supervision ran counter to the evidence before the agency that Petitioner would comply with a demand to appear for removal without detention. Petitioner has never violated a condition of his order of supervision and no new facts or changed circumstances suggest he would.

*PETITION FOR WRIT OF HABEAS CORPUS*

82.     The revocation also "failed to consider important aspects of the problem" before Respondents, making it arbitrary and capricious for multiple other reasons. *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1910 (2020).

83.     First, Respondents failed to consider the serious constitutional concerns raised by revoking Petitioner's order of supervision without notice and opportunity to respond.

84.     Second, Respondents failed to consider the increased administrative burden to the agency caused by revoking the order of supervision of Petitioner, who is neither a flight risk nor a danger to the community, and for whom the agency does not have travel documents needed to effectuate removal, including financial and administrative costs incurred by the agency due to unnecessary detention.

85.     Third, Respondents failed to consider reasonable alternatives to revoking Petitioner's order of supervision that were before the agency, like simply continuing release under the order of supervision and scheduling a future time and date to appear for removal. This alternative would vindicate the government's interests in effectuating a removal order and save it the expense of detention not needed to guarantee Petitioner's appearance.

86.     Fourth, Respondents failed to consider Petitioner's substantial reliance interest, created by its instruction on Petitioner's release notification, the agency would give an opportunity to arrange for an orderly departure once it obtained travel documents.

87.     For these and other reasons, Respondents' revocation of Petitioner's order of supervision was arbitrary and capricious and should be held unlawful and set aside.

## COUNT VI

### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C)
### In Excess of Statutory Authority

88.     Petitioner realleges all paragraphs above as if fully set forth here.

89.    Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

90.    "An agency . . . literally has no power to act—including under its regulations— unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022) (internal quotation marks and citation omitted).

91.    8 U.S.C. § 1231(a)(6) only authorizes detention past the 90-day removal period for a person who is found to be a danger to the community, unlikely to comply with a removal order, or whose removal order is on certain grounds specified in the statute. Even then, if removal "is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by [§ 1231(a)(6)]. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances . . . ." *Zadvydas v. Davis*, 533 U.S. 678, 699-700.

92.    Regulations that purport to give Respondents authority to revoke an order of supervision on grounds other than those listed § 1231(a)(6) are ultra vires and in excess of statutory authority because "[r]egulations cannot circumvent the plain text of the statute." *You v. Nielsen*, 321 F. Supp. 3d. 451, 463 (S.D.N.Y. 2018).

93.    Respondents' revocation of Petitioner's order of supervision was based on ultra vires regulations. Therefore, it was in excess of statutory authority and should be held unlawful and set aside.

## COUNT VII

## Ultra Vires Action

94.    Petitioner realleges all paragraphs above as if fully set forth here.

*PETITION FOR WRIT OF HABEAS CORPUS*

95. There is no statute, constitutional provision, or other source of law that authorizes Respondents to detain Petitioner.

96. Petitioner has a non-statutory right of action to declare unlawful, set aside, and enjoin Respondents' ultra vires actions.

## COUNT VIII

### Violation of the *Accardi* Doctrine

97. Petitioner realleges all paragraphs above as if fully set forth here.

98. Under the *Accardi* doctrine, Petitioner has a right to set aside agency action that violated agency procedures, rules, or instructions. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 ("If petitioner can prove the allegation [that agency failed to follow its rules in a hearing] he should receive a new hearing").

99. Respondents violated agency regulations governing who and upon what findings it may properly revoke an order of supervision when it revoked Petitioner's order. "As a result, this Court cannot conclude that [the revoking officer] had the authority to revoke release" and Petitioner "is entitled to release on that basis alone." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 162 (citing *Rombot v. Moniz*, 296 F. Supp. 3d 386, 386-89); *see also, e.g.*, *Zhu v. Genalo*, 2025 WL 2452352 (S.D.N.Y. Aug. 26, 2025); *M.S.L. v. Bostock*, 2025 WL 2430267 (D. Or. Aug. 21, 2025) (releasing habeas petitioner where revocation of an ICE order of supervision was ordered by someone without regulatory authority to do so).

100. Respondents also violated agency instructions in Petitioner's release notification to give an opportunity to prepare for an orderly departure when they revoked Petitioner's order without advance notice.

*PETITION FOR WRIT OF HABEAS CORPUS*

101.     Under *Accardi*, Respondents' revocation of the order of supervision and decision to ignore instructions in the release notification should be set aside for violating agency procedures, rules, or instructions.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court grant the following relief:

a.     Assume jurisdiction over this matter;

b.     Declare that Petitioner's detention violates the Fifth Amendment, the INA and implementing regulations, the APA, and the *Accardi* doctrine;

c.     Order Petitioner's immediate release;

d.     Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

e.     Grant any other such relief that this Court deems just and proper.

DATED this 11th day of November, 2025.

Respectfully Submitted,

/s/Michael T. Shamoon
Michael T. Shamoon, Esq.
Nevada Bar. No. 15324

**SHAMOON ELIADES LLP**
7995 W Sahara Ave, Suite 101
Las Vegas, Nevada 89117
Telephone: 702-996-7411

## 28 U.S.C. § 2242 VERIFICATION STATEMENT

I am submitting this verification on behalf of Petitioner because I am one of the Petitioner's attorneys. I have discussed with Petitioner the events described in this Petition. On the basis of those discussions, I hereby verify that the statements made in this Verified Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.


Dated:  November 11, 2025                          /s/Michael T. Shamoon
                                                   Michael T. Shamoon, Esq.
                                                   Managing Partner
                                                   Shamoon Eliades LLP
                                                   7995 W Sahara Ave, Suite 101
                                                   Las Vegas, Nevada 89117